**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Ernest DAVIS, Defendant–Appellant.**

**No. 00–50238.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2001

Filed Sept. 4, 2001

Elizabeth A. Newman, Deputy Federal Public Defender, Los Angeles, California, for the defendant–appellant.

Michael J. Raphael, Assistant United States Attorney, Los Angeles, California, for the plaintiff–appellee.

Before: HUG, GRABER, and W. FLETCHER, Circuit Judges.

GRABER, Circuit Judge:

This appeal requires us to define the limits on a district court's discretion to depart downward under U.S.S.G. § 5K2.13 because of a criminal defendant's significantly reduced mental capacity when the court finds that the defendant's criminal history demonstrates a need for incarceration to protect the public. We conclude that the United States Sentencing Guidelines prohibit a departure in those circumstances.

## BACKGROUND

On January 30, 1998, Defendant James Ernest Davis robbed a bank in Beverly Hills, California, by handing a teller a withdrawal slip on which he had written: "This is a holdup." After the robbery, a bank customer saw Defendant get on a bus. The customer notified the police, who arrested Defendant on the bus a few minutes later.

The January 30 robbery proved to be but one in a long string of similar robberies committed by Defendant. According to Defendant, he also had robbed banks on January 22, 24, and 27, 1998, and had made a failed attempt to rob another bank on January 22. Shortly before the 1998 robberies, Defendant had been released from custody after having served a five-year sentence for a separate bank robbery. Before that, Defendant had robbed yet another bank, for which he was sentenced to three years' imprisonment.

Defendant has a long history of mental illness. He suffers from chronic schizophrenia, chronic depression, and other chronic mental disorders. He also has a history of substance abuse.

Following his arrest on January 30, 1998, Defendant pleaded guilty to one count of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a). At sentencing, the district court departed downward for two reasons: (1) Defendant's extraordinary military service; and (2) the fact that Defendant had not received the help that he needed to adjust to his freedom following his release from custody after his prior sentence for bank robbery. The court did not depart downward because of Defendant's mental condition. It recognized that Defendant suffered from an "extraordinary" mental disease, but found that Defendant's substantial criminal history demonstrated a need for incarceration to protect the public and, thus, precluded a departure under U.S.S.G. § 5K2.13.

Defendant filed a timely notice of appeal. On appeal he argues that the district court erred when it concluded that it lacked authority to depart downward under U.S.S.G. § 5K2.13. He also contends that the district court erroneously declined to depart under U.S.S.G. § 5K2.0.

## STANDARD OF REVIEW

■ We review departure decisions under a " 'unitary abuse-of-discretion standard.' " *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 403, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). That "standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.*

## JURISDICTION

■ We have jurisdiction to review a district court's determination regarding its authority to depart downward under the Guidelines, but we lack jurisdiction to review a discretionary denial of a downward departure. *United States v. Lipman*, 133 F.3d 726, 729 (9th Cir.1998).

## DISCUSSION

1. *Departure Under U.S.S.G. § 5K2.13*

Section 5K2.13 of the United States Sentencing Guidelines authorizes a sentencing court to depart downward in certain circumstances because of a defendant's significantly reduced mental capacity:

> A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, *the court may not depart below the applicable guideline range if* (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) *the defendant's criminal history indicates a need to incarcerate the defendant to protect the public.* If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

U.S.S.G. § 5K2.13 (2000) (emphasis added).

■ The text of the guideline plainly prohibits a sentencing court from departing downward if it first finds that a circumstance identified in any one of the three prongs is present. In other words, if a sentencing court determines that (1) the defendant's condition resulted from voluntary intoxication; (2) the present offense involved actual violence or a serious threat of violence, evidencing a need to

protect the public; or (3) the defendant's criminal history demonstrates a need to protect the public, then the court lacks authority to depart downward under U.S.S.G. § 5K2.13. *See United States v. Bowe,* 257 F.3d 336, 347 (4th Cir.2001) (holding that a district court lacks discretion to depart downward under § 5K2.13 when the court finds that the instant offense involved violence or a serious threat of violence).

■ In this case, the district court concluded that a factual finding that the circumstances of the third prong of § 5K2.13 were present eliminated its authority to depart downward under that guideline. As we have just held, that is a proper legal conclusion.

But Defendant also challenges the adequacy of the court's underlying finding that his criminal history demonstrates a need to protect the public. The parties dispute whether the third prong requires a court to predict future crimes by the defendant, *see* 18 U.S.C. § 3553(a)(2)(C) (directing the sentencing court to impose a sentence that takes into account "the need . . . to protect the public from further crimes of the defendant"), or whether it requires a court to predict future violence or the threat of violence. We need not resolve that question to decide this case, however, because Defendant's criminal history demonstrates a need to protect the public from both.

First, Defendant's criminal history establishes that he is a chronic bank robber, and it is permissible to infer that he will continue to rob banks in the future. Second, Defendant's criminal history establishes that he has a propensity toward violent conduct during bank robberies as well as in other situations. He was convicted in 1975 of carrying a loaded firearm in public. In the same year, he was arrested for assault with a deadly weapon in

an incident in which, while intoxicated, he fired a .22 caliber revolver at his brother-in-law, but missed. In 1978, Defendant was charged with assault and battery. In 1981, Defendant again was arrested for assault with a deadly weapon, after he kicked in the door of his ex-wife's house, tried to cut her with a knife, and slashed another person in the face. In 1985, Defendant was arrested for battery on a peace officer, after the officer responded to a call about a fight involving Defendant. During the January 30, 1998, bank robbery, a teller saw the grip of a large-caliber semi-automatic pistol in Defendant's waistband when Defendant raised his jacket to put the stolen money inside.

In short, the district court permissibly found that Defendant's criminal history indicated a need to incarcerate him to protect the public—both from further bank robberies and from violence or the threat of violence. Before making that finding, the district court made the individualized determination required by *United States v. Cantu,* 12 F.3d 1506 (9th Cir.1993). Accordingly, the court correctly concluded that it lacked authority to depart downward under U.S.S.G. § 5K2.13.

### 2. *Departure Under U.S.S.G. § 5K2.0*

■ Defendant also argues that, even if a downward departure because of significantly reduced mental capacity was not available under § 5K2.13, the district court had discretion, alternatively, to depart downward under § 5K2.0, but incorrectly held as a matter of law that it lacked discretion to depart downward under § 5K2.0. The district court did not discuss its authority under § 5K2.0 at Defendant's sentencing hearing.

■ We have "clearly stated that '[t]he court's silence regarding authority to depart is not sufficient to indicate that the

court believed it lacked power to depart.' " *United States v. Davoudi*, 172 F.3d 1130, 1134 (9th Cir.1999) (quoting *United States v. Garcia–Garcia*, 927 F.2d 489, 491 (9th Cir.1991)) (concluding that the fact that the district court did not address a particular factor did not mean the court had concluded that it lacked authority to depart under the circumstances). Here, the district court addressed only its authority to depart under § 5K2.13; the court was silent with regard to its authority to depart under § 5K2.0. That being so, under our precedents we must conclude that the district court held or assumed that it had authority, but simply declined to exercise its discretion to depart under § 5K2.0. There is, therefore, nothing further for us to review. We "may not review a district court's discretionary decision refusing to depart from the Sentencing Guidelines." *Id.* at 1133. In other words, we lack jurisdiction to review this argument.

AFFIRMED in part; DISMISSED in part.